Final case for argument this morning is 17-1453 Lesseman v. Stratasys. May it please the Court, Your Honors. The District Court's construction should be reversed. The terms adjustable and and should be accorded their plain and ordinary meanings. There's this court to depart from the ordinary meaning. These are lay terms and as Phillips has said, they should be given their plain and ordinary customary meanings. The claim language in this case supports giving it its plain and ordinary meaning. If you look at the claim language, what it really describes is a snapshot in time. It looks at the assembly at the time it's configured to process material and at that time it looks to see if it's got three die components connected in the way it's received within language. But most importantly, what it specifically says is the positions of the second and third die components must be adjustable along the longitudinal axis. And so what that means is, are the positions of the second and die component movable along the longitudinal axis? But it still says there's a first, a second, and a third. And under your view of the construction, those terms no longer have meaning because you can take the third and make it cease to be third under your version of the construction by sticking it in between one and two and now you've renamed it two. I don't see how you can do that. Your construction would read out first, second, and third, it seems to me. It would not read out first, second, and third, Your Honor, because the way the claim is written, you look at the claim at the time it's configured to process flow. The claim doesn't talk about what it has to look like during the adjustment or after the adjustment. So it only talks about, you look at the claim and it says, at the time that I'm configured to process the material, I have to have these three elements, the first die component, the second die component, the third die component. And then at that point, the question becomes, there's a position for the second die component and a position for the third die component. And can that be adjusted along the longitudinal axis? There's certainly, you would agree, no, you have to agree because it's indisputable. There's no disclosure in this spec of an example, an embodiment, in which the whole thing is taken apart and the components are moved from one place to the other. Is there? There is not for the figures two to four. It is a telescoping or threaded embodiment. You're right. So there's no disclosure in the spec of an example which does what you said. Now that of course does not preclude this claim from covering it. I get it. But when you look in order to understand how to interpret these words at the specification, I guess I'm thinking the intrinsic record really doesn't support what you'd like us to interpret this as. Because let's start with, there's really two points in the intrinsic record I'd like you to deal with. Let's start with column six. And at about line 49, I think this is the most, probably one of the most relevant parts of the spec to this question. And it says the ability to adjust the relative positions of the die components 201, 202, and 203. That's 1, 2, and 3, right? In the example, yes. Okay. Along the longitudinal axis allows the extrusion die to make changes to the flow of the extrusion material without having to retool the die, replace the die, adjust the temperature. So I guess I feel like what you're seeking to do is to retool the die. There's a difference between just sliding something a little bit left or right or totally taking it apart and reconfiguring it. And so let me, so when you look at the intrinsic record, what you'll see is the prior art that the patent holder was distinguishing to was a single piece die that's a fixed channel die. And in that context, what retooling means, and it's in the record, what retooling means is drilling it out. You have to make some permanent changes to it. So in the context of extruding material, what you have to say is, oh, I need a larger channel for this particular material. Retooling can mean putting something in to expand the diameter, for example. I mean, I've read pretty extensively in the art, so I have a sense of what different things could mean. But disassembling the device and reconfiguring it isn't also within the umbrella of retooling. And it isn't in this case for this specific reason is in this prior art, the invention is, I mean, in this application, the invention is to an adjustable die. Yes, but this one just, all the ones disclosed just kind of slide a little left or right in that telescope. And wait, wait, before we, because part of the other problem is I feel like I stopped too short in my reading, because your answers to me are very reasonable. But I think the very next sentence takes away from the reasonableness of your answers as well, because it says basically you're going to adjust the positions without retooling the die, and I was left wondering whether or not taking it apart in the manner the accused infringers do would amount to retooling. And you're telling me no, no, only sort of a permanent change would amount to retooling, but the very next sentence says, as a result, ah, a result of the adjustability of these three components, as a result, the extrusion die 200 of the present invention, now that's kind of magic language in our world, of the present invention is capable of reducing the time required to develop a suitable extrusion die to form a new product and to adapt to the changing extrusion materials. And you have to have something that can reduce time and adapt to changing extrusion materials. Sliding something around in a telescoping fashion absolutely meets those criteria. Having to stop, take everything apart, reconfigure it, seems to not be capable of allowing you still to have that reduction in time and adjustment to extrusion materials. Your Honor, actually, that supports it. There's such a significant reduction in time, so what the accused There's a significant reduction in time, I agree with you, as compared to a single component invention die, right? And that's where you're going, right? You're going to tell me the prior art was a single component, and this is three components, and the advantage of having three components is they can be varied, and you don't have to do it with a single component. Is that where you're going? I am going there, but it's also just the mechanism. All they've done is, it's the same invention. It's the same adjustability. All they've done is, it's just a few screws to remove, and it's actually a set where what you do is, instead of having a telescoping arrangement, you have a set of Lego blocks where you can just put in pieces to be able to make the same adjustment. So it is actually meant to reduce the time. It is used as in reducing the time. It does everything that the, what you say are the advantages of this preferred embodiment are exactly what are achieved by the Stratasys product. Well, the Stratasys product might reduce time as compared to having to replace it with a whole new die configuration, but I can't imagine that it is as efficient, for example, as what is actually disclosed, the adjustable telescoping mechanism. And I'm not sure that, because there's not language in here that specifically limits it to the telescoping method, and it does... Well, I mean, but that's what we're trying to decide. We're trying to decide whether the word adjustable means adjustable in the manner disclosed in this patent, or whether it means and includes an adjustability that requires taking it apart and reconfiguring it, as opposed to simply adjusting it. I see those as two different things. And taking it apart in this context is really a very simple act. It is not the kind of taking apart that you're imagining. It's simply taking a couple of screws apart. It's like in the second embodiment where they take some parts of the mandrel apart to be able to adjust it. It's a simple mechanical adjustment that they're making that really is different from the art, and that's why the law kind of breaks down on it. Suppose your tie was a little off to the left right now, and I might say, Oh, here, sir, let me adjust your tie. I would sort of move it to the center. But it seems like I would be going beyond adjusting if I said, Here, let me take you off it and retie it properly on you. That doesn't feel like an adjustment, and that's kind of what you're doing here. You're taking apart these components, reordering them. No. In this case, the language of the claim really is to looking at it at one point in time, and the advantages that you're looking at in column six, which are the right advantages to look at, are achieved by their embodiment because all you're doing is it's intended to have a set of dies, set of die components that you can move around exactly in the way we're talking about where they disassemble and reassemble, and it achieves the same thing, and it gives you the same reduction in time. It gives you the same ability to be able to quickly come up with a new die configuration for processing a new material. That's exactly how it's used, and the reason I keep going back to the single fixed channel die, as the distinction is, in the case law in this court, in fact, what everybody relies upon, when you walk away from the ordinary meaning, it's because within the spec, there's something that says part of the ordinary meaning doesn't apply. And here, there's nothing there because— But you're presuming this is the ordinary meaning. I just gave you an example about your tie, which I think is on all fours with this, and you've just sort of stepped right over it. I don't think I'd be adjusting your tie when I take it off of your neck and then put it back on and retie it. I think you would still be adjusting my tie, Your Honor. It's just that may take a little extra time, but it's different from— But that's when the spec uses other words like retooling. I feel like that falls more within those kinds of words than it does the adjustment words. In the tie example, if you were to take it to that far, in this case, what you would have to say is you had to make me a new tie to adjust it, or you had to cut my tie and make some other permanent change to adjust it, as opposed to simply either moving it or, as you said, take it out and retie it. Those are different adjustments than the type of retooling that we're talking about when it's a permanent die where you're saying cut the tie or make a new tie. I mean, you've made a lot of statements today that it's like I'm just kind of bewildered by because it's almost like you expect me to accept them as true, but they're completely fact findings. You've told me that it would take the same amount of time to make these two sets of adjustments. There's nothing in this record to that effect. There's nothing anywhere in this. There's no evidence in this record of anything vaguely like that. There's no—nothing was— All the arguments you are making are, quite frankly, factual arguments that you very well should have put towards the district court judge prior to his or her claim construction— her claim—her, his, I don't know. Prior to its claim construction, the court's claim construction, but you didn't. You didn't—you chose not to proffer expert testimony that explains these differences between retooling and adjustment or the differences in the time savings between what their product does and the adjustment otherwise disclosed in the patent. So, I mean, I can't make decisions on all of that. That would all be fact finding, and you didn't even introduce any evidence to support what you're saying. But, Your Honor, in this case— And that was your choice. That was a litigation choice that you made. I don't—I don't think it was as much of a litigation choice as the intrinsic record, Your Honor, in this case. It's really to a fixed-channel, single-piece die. And what the—we're the first to have come up with a multi-component adjustable die. You're saying the fixed record—the intrinsic record doesn't define what it means to retool anywhere in this intrinsic record. But the retooling in this context, and there is evidence of this in this context, are making permanent changes, whereas in both the—in the construction that we're asking for, the dies that we're talking about are not permanent changes. The construction you're asking for? I thought you didn't posit a construction. I'm sorry. The ordinary meaning—I apologize. The ordinary meaning would cover having—making changes to the die that are not permanent. So these are all— Well, maybe that's part of the difficulty in the record that's been developed here, is that you didn't posit an alternative claim construction. You just said—I guess you said ordinary meaning, or you say just construe the claims. Yes. We did say ordinary meaning. And that makes it harder, I think, for everyone, including the district court judge, because, you know, it's—it doesn't help the focus. But anyway, that's just an opportunity. Just one last thing, if you don't mind, because I know you want to save some time for rebuttal. Where in this patent does it say retooling affects a permanent change? It's in the context of— Where? Column 2. Column 2. So you've now talked about the fixed-channel die. That's what they're talking about in the background. I'm in column 2. Tell me a line number, please. If you go to line—I think it's in top of column 2. It's at line 7 or 8. Accordingly, errors are encountered during the development of the extrusion die, must be corrected by either retooling of the extrusion die. Do you see that? Yeah, but why does that suggest that retooling equates to a permanent change to the entire die? Because the context of this is a fixed-channel, single-piece die. That's what they're talking about. And you can see that in column 1 when they're talking about extrusion die 106 includes a die component having a fixed channel. It's a fixed-channel, single-component die. And that's still in the art, and we have this in the record. People still in the art know that the changes that you make to such a die to be able to deal with different materials. So possibly retooling a fixed-channel, single-piece die involves affecting a permanent change. That doesn't mean the word retooling used in multi-component products necessitates a permanent change. I don't know. It's not in this record is your problem. But the patent itself never discloses as prior art a multi-component die. The way the patent has been written, it's specifically to the prior art being a single-component fixed-channel die where the retooling is permanent, and that's in the record. And what the invention is is to a multi-component adjustable die. And so the retooling as it's used in that is shown advantage. Where in this patent does it say the invention is to a multi-component die? Where does it say that? Because you know what? All of the advantages touted in this invention have to do with adjustability, and none of them have to do with multi-component. Your Honor, if you look at the extrusion die, they're claimed as a three-component die. Yes, it's claimed that way, and it's disclosed that way, and all the examples include the multi-component. But what I don't see is this patent stressing that the multi-component is the invention. And, in fact, it can't be because there were multi-component dies in existence before this, according to the prior art. I'm saying from this. They weren't adjustable. Adjustable. They're adjustable. Exactly. But it's adjustable because it's a multi-component die. But there were multi-component dies beforehand. And they weren't adjustable. They were not adjustable. But here they're adjustable, and there's not a specific mechanism that it's not touting the mechanism of telescoping over disassembly, reassembly, which is really the difference in the case law. This is much more like Phillips than any of the other cases. It's not like Curtis Wright. It's not like Symantec because, in those cases, when you look at the ordinary meaning, it encompasses both embodiments. And there was something in the spec that specifically said, I disparage this methodology. I extol this over that. Here it's silent on disassembly, reassembly, and all it does is say one embodiment of achieving this is with telescoping. And to limit the claims to that telescoping method is improper, and it's actually reading in the embodiment, which is wrong under your case law. Thank you. We'll be still two minutes, everybody. Thank you. May it please the court. The issue picking up on where we left off is what's the ordinary meaning of these claim terms, the adjustable limitation in the context of the patent, which is what the court's case law says you look at the context of how it's used. And the claims really answer the question right off the bat with picking up on what Judge Moore was talking about with the order of the components. The claim is for an assembly. It's a disassembly that has to have components that are in a specific order, one, two, and three, where the components are received within each other and adjustable along the longitudinal axis. And so for the claim limitation that's actually in question for adjustable, for example, is the second component that has a position that's adjustable along the longitudinal axis relative to the previous component, and the claim goes on to say it's also received. And I don't understand claim one as being limited to a telescoping process. I see that coming in in the tapering limitation of claim maybe three, is it? Yeah, claim three. So adjustable could mean something different, right? Comprising means maybe there could be more components. There's a first, a second, a third, but maybe there are more things even in this, but those things maybe aren't really adjustable, but maybe three and two can slide around. I mean, I just see the telescoping coming in through the dependent claim, and I assume without being a skilled artisan that the independent claim is broader, and therefore it could be done in a manner other than simply by telescoping. You're absolutely right. It's comprising, so you could certainly add more components for sure. The telescoping is what we've used as a shorthand to describe that really on the second and third components that they have to be adjustable and received within the previous component. So when you're looking at the patent, what it's describing in claiming and claim one is an extrusion die assembly, a single assembly where there's components that are received. I see. You're right. It has to be received within. I missed that part. So that kind of really does limit you somewhat to telescoping. We think it is really essentially claiming the telescoping arrangement where you have one component and then a second component that's received within. How does the accused device work then? How is it received within if it can be? Because I would think that would mean each piece has to get progressively larger for it to work. How can you take three out and put it between one and two and have all the received within stuff be met? With the accused device? Yeah. So we actually disagree that in the accused device the components are received within. That's not obviously an issue here, but in the accused device it's plates that are stacked on top of each other and there's pins in the plates that are really for alignment, and those pins sink into a surface on the plate. And so that's what Leisman says is received within, which we say that's actually not received within. Okay. I get it. So that is a dispute, but to give a little more context to it. I was just trying to figure out if it's not limiting to telescoping, what could it include and how could it possibly extend to your device? With the accused devices, Stratasys' position in the district court was that the components are not received within an accused device. That's not in front of us, so you don't have to do that. Go ahead. But with the accused devices, when they're put together, you can't do anything with them. Everything's fixed in place. The only way to make any sort of, I guess we'd call a modification to the accused device is to disassemble them. They're not adjustable longitudinally. You just have to disassemble them. You disassemble them. And you know what? It's possible that a skilled artisan would take a different reading of retooling as described in this patent, but there's no evidence on this, is there? There's no evidence of what retooling means. The concept of it means permanent retooling that counsel was raising and that type of argument. The patent doesn't talk about permanent retooling. It's just referring to the advantage being that it avoids the need to retool or replace the die. And, you know, at the Markman hearing, for example, counsel acknowledged that with the accused devices, if you're taking something apart and making a different die, that's a different die. That feels like retooling to me. It's retooling. It's replacing. It's both of those concepts. And that's what the district court noted is that, you know, contrary to what Liesman was saying, this disassembling and taking out components and making a different die is the type of complication that the invention is trying to avoid. I don't have anything more for you. Do you have anything else you'd like to add? Well, we'd ask that the district court's constructions be affirmed and that the judgment of non-infringement be upheld. Thank you, Your Honor. Thank you. Your Honor, I just have two points. One is there is a piece of testimony that's in the record. It's on Appendix 2105 where their expert specifically said this idea of having a threaded configuration that's in the patent, that if you change the components to make it shorter, that would not be retooling. Where is that, Appendix 2105? Appendix 2105, lines 13 to about 24. Okay, there's four pages, 2105, and then is it 73, 74? Oh, sorry, page 73, lines 13 to about 24. Well, but he doesn't say taking it apart and moving it around wouldn't be retooling. He says taking it apart, cleaning it, and putting it back together wouldn't be retooling because the implication is retooling is changing it in some way. I don't know that the change has to be permanent, but I certainly agree with you that the plain meaning would involve changing it. How would you be retooling something when you clean it? Your Honor, but your point before was just simply if you took it apart and you had to put it back together. In exactly the same way. Even if you added it, it would be the same action, and that wouldn't be retooling in this context. And the reason is because of the way the patent has described the prior art and then the invention based on that prior art. And if you look at your law. My kids play with Legos, and when they build with Legos, they follow the little instruction book and they build with Legos. And sometimes they disassemble it in a different one of my kids. I have a lot of kids. A different one will assemble the same Legos. And when it turns out the same way, I mean, it's been rebuilt, but I don't think it's been retooled. However, if they decide to get creative and make their own thing with all the pieces instead of following the book, that feels like retooling to me. But in the context of this claim language where all you have to do is answer the question whether the position of that Lego blocks can be adjusted along the longitudinal axis, it doesn't specify the mechanism. So because it doesn't specify the mechanism, any mechanism that allows for that change in position along the longitudinal axis is covered by that claim. Any mechanism that doesn't require retooling, because that's what the spec says in two separate places. The present invention doesn't require retooling. And in the context of this specification, because the background and the prior art that it distinguishes the invention from is a single piece, single component fixed channel die versus a multi-component adjustable die, that's the distinction you have to look at. And that's why when you look at Curtis Wright or you look at the Symantec case, those are all where the patentee himself has made that distinction between what the ordinary meaning would cover. Here on adjustable, there is no such distinction. The patentee has never extolled telescoping versus disassembly, reassembly. The patentee has never disparaged disassembly, reassembly as a manner of adjustment. And so for that reason, the ordinary meaning should apply. Lastly, Your Honor, I'll just say on received within, the district court itself rejected the idea that it had to be received within the channel, because they said that was reading in the embodiment. That same analysis would apply to adjustable. And so the pins, when they're received within, you can still have an embodiment where it's received within, where it's received within the plate, as counsel said, and not be the same as a telescoping method. Thank you. I thank both sides of the case. This is a comment that concludes our proceedings for this morning. All rise.